## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| **KENNETH HOPKINS, JR.** Individually and On Behalf of All Others Similarly Situated, <br><br> **Plaintiff,** <br><br> vs. <br><br> **CHIPOTLE MEXICAN GRILL, INC.** <br><br> **Defendant.** | Case No. <u>8:21-cv-00646</u> <br><br> **Class Representation** <br><br> <u>Jury Trial Demanded</u> |

## PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff Kenneth Hopkins, Jr. ("Plaintiff" or "Hopkins"), individually and on behalf of all others similarly situated, brings this action against Defendant Chipotle Mexican Grill, Inc. ("Defendant" or "Chipotle") to obtain damages, restitution, injunctive, and/or declaratory relief for himself and on behalf of the proposed Class as defined herein. Plaintiff makes the following allegations upon information and belief, except as to his own respective actions, the investigation of his counsel, and the facts that are a matter of public record.

## INTRODUCTION

1.      This action is brought to remedy violations of applicable law in connection with Defendant's deceptive promises to provide "free delivery" or "$1 delivery" on food deliveries ordered through its app and website.

2.     These representations are false and misleading because Chipotle  actually imposes a variety of hidden, mislabeled, and/or undisclosed  delivery charges on its consumers.

3.     Chipotle assesses an extra, loosely-termed, "service" charge only on food delivery orders that amounts to approximately 10% more than   what is charged for the exact same food purchased by Chipotle's customers who do not have their orders delivered. , .  Defendant's description of the charge even if disclosed as a "service" is itself deceptive, false, or otherwise misleading as it is only imposed on consumers who chose delivery of their orders.  The charge constitutes a delivery fee and should be disclosed as such to consumers.

4.     Delivery customers are subject to another hidden upcharge – Chiptole misleadingly  marks up food prices for delivery orders by 12%-15%.   Plaintiff and the Class  have no way of knowing this upcharge as the delivery menu exclusively contains the higher prices with no reference to the lower prices offered to orders that do not require delivery.

5.     The charges imposed on delivery customers are far greater than those imposed on non-delivery customers and the imposition of these hidden mislabeled and/or undisclosed delivery upcharges effectively makes Chipotle's promises of "free" or "$1" delivery deceptive, false,  misleading, or likely to mislead.

6.     Rather than presenting consumers with correct and non-misleading information about its pricing structure, Chipotle misrepresents the nature of the delivery charges assessed on the Chipotle mobile application and its website.  Chipotle issues in-

app and online marketing materials that fail to correct reasonable understandings of the "free" or "$1" delivery promises and misrepresent through words, misrepresentations, and omissions the actual costs of the delivery service.

7.      Chipotle omitted and concealed material facts about its delivery service, failing to disclose that: (a) use of the delivery service causes an increase in food prices charged; and (b) the so-called "service fee" is assessed exclusively on delivery customers and is therefore by definition a delivery charge.

8.      By engaging in these false and misleading practices, Chipotle deceives consumers into making online food purchases they otherwise would not make or significantly paying more for food purchases had they known the true state of facts. Chipotle has also decided the "price premium" of delivery without disclosing it to its customers, like Plaintiff and the Class, thereby foreclosing a consumer from deciding if the delivery is worth the actual premium charged.

9.      Reasonable consumers like Plaintiff understand the "free" or "$1" delivery misrepresentations, omissions, or actions that misled or are likely to mislead mean the total additional cost they will pay as a result of having their food delivered, as opposed to ordering online and picking up food in person or ordering and picking up food in person.

10.      Chipotle's practice of concealing the actual costs of delivery is intended to and does in fact have the effect of misleading or deceiving consumers, leading consumers to believe that they are either not paying for delivery or paying only $1 for delivery when actual delivery charges consisting of the service fee and upcharged menu were substantially greater.

11.     This purpose of Chipotle's course of conduct could not be more obvious: to increase sales and gain an (unfair) advantage over competitors, some of whom also offer delivery services through their apps and websites but unlike Chipotle, fairly and prominently represent their true delivery charges.

12.     Plaintiff seeks damages and, among other remedies, injunctive relief that fairly allows consumers to decide whether they will pay Chipotle's delivery mark-ups.

## PARTIES

13.     Plaintiff is a consumer and citizen of the state of Florida, residing in the City of Lakeland, County of Polk.

14.     Defendant Chipotle Mexican Grill, Inc. is incorporated in Delaware and maintains its principal business offices in Newport Beach, California.

15.     Chipotle, at all times relevant to this matter, was a foreign corporation authorized to do business within and actually doing business in the State of Florida, with its registered agent, Corporation Service Company, located at 1201 Hays Street, Tallahassee, FL 32301.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § l332(d)(2) and (6), because: (i) there are 100 or more class members, (ii) the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity, because at least one plaintiff and one defendant are citizens of different states.  This

Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

17.     This Court has general and specific jurisdiction over Defendant because Defendant has sufficient minimum contacts with Florida and within the Middle District of Florida to establish its presence in Florida, and certain material acts upon which this suit is based occurred in the Middle District of Florida.  Chipotle is a corporation authorized to conduct, and does conduct business, in Florida and intentionally avails itself of the Florida market through the ownership and operation of numerous store locations throughout Florida, including within this District, which has caused both obligations and liability of Defendant to arise in this District.  Chipotle operates 186 restaurant locations in Florida.

18.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because Defendant does substantial business throughout this District, is subject to personal jurisdiction in this District, and this case is based on acts or omissions of Defendant and injuries to Plaintiff that occurred in this District.  Chipotle operates restaurant locations in this District, including ten restaurants in Tampa and sixteen restaurants in Orlando.

## FACTUAL BACKGROUND

### Chipotle's False and Misleading Representations and Omissions

19.     In the summer of 2018, Defendant announced that it was launching "direct delivery powered through DoorDash, which allows customers to get Chipotle delivered without ever having to leave Chipotle's app or website."     See

https://newsroom.chipotle.com/2018-08-28-Chipotle-Fans-Rejoice-Chipotle-Launches-Direct-Delivery-Service-With-Free-Promotion (last visited March 9, 2021).

20. Fee "[t]ransparency [in food delivery apps] is helpful to empower users to make clear decisions about what their money is going toward and how it's impacting their local economy… At a minimum, consumers deserve to know what they're paying for – be it a service fee, a tip, or a meal – and who they're paying for it – so that they can make informed choices about whether and how to utilize these services…" https://digital-lab-wp.consumerreports.org/wp-content/uploads/2020/09/Food-delivery_-Report.pdf(last visited 3/10/2021).

21. The core pricing components for food delivery apps include:

- Menu item:  the actual food ordered

- Service fee:  the fee charged by the delivery company for providing the service

- Taxes:  sales tax on the order based on applicable local tax laws

- Delivery fee:  price for having food delivered

- Gratuity:  the optional tip for the delivery driver

22. Beginning in early 2020, Chipotle began prominently featuring "free" or "$1" delivery promises on its website and mobile app.

23. These representations were conspicuously displayed and, consequently, viewed by Plaintiff and the Class members.

24. These representations were and are often made on the home screen of the website or app and then again before consumers finalize food purchase.

6

25.     For example, Chipotle represents as follows on its website: "REAL FOOD. REAL EASY.   $1 DELIVERY FEE."   https://www.chipotle.com/dollardelivery (last visited 3/9/2021).

26.     For "free" delivery orders, the screen was the same except that "free" would replace "$1."

27.     Chipotle's representations of free and $1 delivery were false and misleading.

28.     When consumers used Chipotle's website and/or app to make a delivery order, they were taken to a screen that represents the "Bag Total", consisting of the cost of the food, the "Subtotal", the cost of food minus any promotional codes, the "Delivery Fee", free or $1, "Taxes and Fees", representing sales tax and additional fees, and the "Total", the sum of the previous categories.

29.     First, Chipotle secretly marked up the cost of food reflected in the "Bag Total"—adding approximately 10% to the cost of burritos, tacos and quesadillas ordered for delivery. When the same items are ordered through the app or website for pickup instead of delivery, Chipotle did not and does not make comparable mark-ups.

30.     Chipotle omitted this material fact from its app and website disclosures, never informing users of this secret markup.

31.     This secret markup—which Chipotle only applied to delivery orders—constitutes a hidden delivery fee.  This practice alone renders false Chipotle's promise of "free" or "$1" delivery, which is made repeatedly in the app and the website, and then repeatedly in the "Delivery Fee" line item on the order screen.

32.     In a recent call with investment analysts, Chipotle's CFO Jack Hartung stated nationwide delivery sales were nearly 25% of Chipotle's total sales.  He added, "[t]o help improve the economics on this premium access point, we have implemented several delivery menu price differentials with a weighted average being right around 13%."  CEO Brian Niccol stated in that same call that Chipotle's sales grew 7% in 2020, reaching $6 billion.

33.     In short, the "delivery fee" is not actually "free" or "$1." The actual "delivery fee"—the extra charge for having food delivered as opposed to picking it up— is the listed "Delivery Fee" plus the hidden food markup applied exclusively to delivery orders.

34.     Second, Chipotle applied a "Service Charge" exclusively to delivery orders, hid that "Service Charge" from users behind a hyperlink, and misrepresented what the "Service Charge" was actually for: a hidden delivery charge.

35.     On ordering screen, and for the first time in the ordering process, Chipotle presented a line item called "Taxes and Fees." The ordering screen did not explain what "Taxes and Fees" are comprised of.

36.     Only if a user clicked on "Taxes and Fees" do two further line items appear: "Tax" and "Service Fee." "Tax" added the locally applicable sales tax rate. "Service Fee" added a further charge of 10% of the total food cost. This "service fee" was exclusively applied by Chipotle to delivery orders, and is therefore by definition an additional hidden delivery charge.

37.     In short, the "delivery fee" is not actually "free" or "$1." The actual "delivery fee"—the extra charge for having food delivered as opposed to picking it up— is the listed "Delivery Fee," plus the delivery menu price markup, plus the hidden "Service Charge" markup applied exclusively to delivery orders.

38.     If that were not enough, Chipotle misrepresents the true nature of the "Service Charge."

39.     A disclaimer below "Service Fee" explains "[t]his helps offset the costs of digital convenience."

40.     This disclaimer is false. The "Service Fee" is not for "digital convenience," it is a hidden delivery fee. This is necessarily true because the "Service Fee" is only assessed on delivery orders. It is not assessed on order placed through the mobile app or website that are for pickup—even though the same so-called "digital convenience" is used by a consumer for such an order.

41.     After an order is placed, Chipotle sends a receipt to users via email. In that post-order email, and only it that post-order email, Chipotle states the true nature of the "Service Fee." There, and only there, Chipotle states:  "This fee powers easy, integrated delivery." Chipotle thereby admits that the "Service Charge" is a fee for delivery, and for nothing else.

42.     Chipotle does not inform consumers of their true costs for its delivery service and it misrepresents its delivery charges as "free" or "$1," when in fact those costs are actually much higher.

43.     Notwithstanding its promises, Defendant actually charged Plaintiff and the proposed members of the Class for delivery, and in amounts far in excess of $1.

44.     If Chipotle had not concealed material information and made false representations regarding its delivery fees, Plaintiff and other members of the Class would not have made delivery orders with Chipotle.  Instead, Plaintiff and the proposed members of the Class would have made in-store purchases or would not have purchased food from Chipotle at all.

**Plaintiff's Experience**

45.     Plaintiff used the Chipotle app to purchase food on May 29, 2020.

46.     When using the app, and prior to placing Plaintiff's order, the Chipotle screen stated that delivery was $1.00.

47.     After he placed his order, the screen reflected that he was charged a Delivery Fee of the promised $1.

48.     However, the cost of the food ordered by Plaintiff bore a hidden delivery fee markup.  To illustrate, Chipotle charged Plaintiff $11.15 for a steak burrito and soft drink.

49.     Upon information and belief, the same items would have cost Plaintiff 12-15% less than what he paid had Plaintiff picked it up from Chipotle instead.

50.     In addition, Plaintiff's purchase included a hidden "Service Charge" that in fact represented an additional delivery fee.  Chipotle charged Plaintiff a $1.48 Service Fee on his order.

51.     Upon information and belief, this same service fee is assessed only on delivery orders like the one made by Plaintiff and would not have been assessed to Plaintiff had he picked up his order in person from the Chipotle location.

52.     Plaintiff would not have made the purchase if he had known the Chipotle delivery fee was not $1.

53.     If Plaintiff had known the true delivery fee, he would have chosen another method for receiving food from Chipotle or ordered food from another provider.

54.     Plaintiff also used the Chipotle app to purchase food on March 2, 2021.

55.     When using the app, and prior to placing his order, the Chipotle screen stated that delivery was $1.00.

56.     After he placed his order, the screen reflected that he was charged a Delivery Fee of the promised $1.

57.     However, the cost of the food ordered by Plaintiff bore a hidden delivery fee markup.  To illustrate, Chipotle charged Plaintiff $17.30 for a steak burrito, chips with guacamole and a soft drink.

58.     Upon information and belief, the same items would have cost Plaintiff 12-15% less than what he paid had he placed his order at the Chipotle location instead.

59.     In addition, Plaintiff's purchase included a hidden "Service Charge" that in fact represented an additional delivery fee.  Chipotle charged Plaintiff a $2 Service Fee on his order.

60.     Upon information and belief, this same service fee is assessed only on delivery orders like the one made by Plaintiff and would not have been assessed to Plaintiff had he picked up his order in person from the Chipotle location.

61.     Plaintiff would not have made the purchase if he had known the actual Chipotle delivery fee was not $1.

62.     If Plaintiff had known the true delivery fee, he would have chosen another method for receiving food from Chipotle or ordered food from another provider.

## CLASS ACTION ALLEGATIONS

63.     Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and the following Class:

> All consumers in Florida who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, ordered food delivery through the Chipotle mobile app or website, and were assessed higher delivery charges than represented.

> Excluded from the Class are Defendant, any entities in which Defendant has a controlling interest, any of its parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families. Also excluded from the Class are all persons who make a timely election to be excluded from the Class; governmental entities; and the Judge to whom this case is assigned and his/her immediate family. Plaintiff reserves the right to revise the definitions of the Class(es) based on information learned through discovery.

64.     Class certification is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

65. <u>Numerosity—Fed. R. Civ. P. 23(a)(1)</u>.   The Class is comprised of thousands of individuals who were Defendant's customers, the joinder of which in one action would be impracticable.  The exact number and identification of the members of the Class is presently unknown.  The identity of the members of the Class is ascertainable and can be determined based on Defendant's records.

66. <u>Predominance of Common Questions—Fed. R. Civ. P. 23(a)(2), 23(b)(3)</u>. The questions of law and fact common to the Class predominate over questions affecting only individual members of the Class, and include, but are not limited to, the following:

a. Whether during the class period, Defendant deceptively, falsely, or misleadingly, or took actions likely to mislead misrepresented "free delivery" or "$1 delivery" on food deliveries ordered through the Chipotle website and mobile app;

b. Whether during the class period, Defendant failed to disclose or otherwise omitted material information which misled or was likely to mislead concerning its fees on food deliveries ordered through the Chipotle website and mobile app;

c. Whether Defendant's alleged misconduct through acts and omissions misled or was likely to mislead consumers;

d. Whether Defendant engaged in unfair and/or deceptive business practices under the laws asserted;

e. Whether Defendant's alleged conduct constitutes violations of the laws asserted;

f. Whether Plaintiff and the proposed members of the Class have been damaged, and if so, the proper measure of damages;

g.     Whether an injunction is necessary to prevent Defendant from continuing to deceptively, falsely, or otherwise misleadingly represent "free delivery" or "$1 delivery" on food deliveries ordered through the Chipotle website and mobile app; and

h.     Whether Plaintiff and the Class are entitled to other relief provided by law or statute.

67.    Typicality—Fed. R. Civ. P. 23(a)(3).  Plaintiff's claims are typical of those of the other members of the Class because they arise from the same pattern of conduct and omissions of Defendant and under the same legal theories as the claims of the other members of the Class. Plaintiff was injured by Defendant's false representations about the true nature of the delivery fee.  Plaintiff and the proposed members of the Class have suffered the same or similar injury as a result of Defendant's false, deceptive, and misleading representations.  More specifically, Plaintiff, like all members of the Class, purchased delivery orders from Defendant and suffered losses resulting from the Defendant's hidden delivery charges.

68.    Adequacy—Fed. R. Civ. P. 23(a)(4); 23(g)(1).  Plaintiff is an adequate representative of the Class because he fits within the class definition and his interests do not conflict with the interests of the members of the Class he seeks to represent and because he is represented by experienced and competent Class Counsel who likewise have no conflicts of interest with the members of the Class.  Plaintiff's Counsel have successfully litigated numerous class actions and Plaintiff's Counsel intends to prosecute

this action vigorously for the benefit of the Class.  Plaintiff and Plaintiff's Counsel can fairly and adequately protect the interests of all of the Members of the Class.

69.    Injunctive Relief—Fed. R. Civ. P. 23(b)(2).  Defendant has acted or refused to act on grounds generally applicable to the proposed members of the Class, thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole. Plaintiff remains interested in ordering food for delivery through Chipotle's website and mobile app; there is no way for him to know when or if Defendant will cease deceptively misrepresenting the cost of delivery.  Specifically, Defendant should be ordered to cease from representing its delivery service as "free" or "$1" and to disclose the true nature of its mark-ups.  Defendant's ongoing and systematic practices make declaratory relief with respect to the Class appropriate.

70.    Superiority—Fed. R. Civ. P. 23(b)(3).  The class action is the best available method for the efficient adjudication of this litigation, because individual litigation of members of the Class's claims would be impracticable and individual litigation would be unduly burdensome to the courts.  Because of the size of the individual claims, no member of the Class could afford to seek legal redress for the wrongs identified in this Complaint.  Without the class action vehicle, the proposed members of the Class would have no reasonable remedy and would continue to suffer losses, as Defendant continue to engage in the bad faith, unlawful, unfair, and deceptive conduct that is the subject of this Complaint, and Defendant would be permitted to retain the proceeds of its violations of law.  Further, individual litigation has the potential to result in inconsistent or contradictory judgments.  A class action in this case presents fewer management

problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

71.    Plaintiff and the proposed members of the Class do not anticipate any difficulty in the management of this litigation.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUTPA") F.S.A. § 501.204
## (ASSERTED ON BEHALF OF PLAINTIFF AND THE CLASS)

72.    Plaintiff repeats, realleges and incorporates by reference each of the foregoing and succeeding paragraphs of this Complaint as if fully set forth herein.

73.    FDUPTA makes it unlawful to engage in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." F.S.A. §501.201, et seq.

74.    Plaintiff and the proposed members of the Class are "interested parties or persons" and "consumers" within the meaning of the FDUTPA who purchased goods and services for personal or household purposes.

75.    At all relevant times hereto, Defendant were engaged in "trade and commerce" in the State of Florida within the meaning of the FDUTPA in connection with its food delivery service.

76.    Defendant engaged in unfair and deceptive practices within the State of Florida in violation of FDUPTA by affirmatively, unfairly, unconscionably, deceptively and knowingly misrepresenting and omitting on its website and mobile app in a manner which misled or was likely to mislead that it provides "free delivery" or "$1 delivery" for

food orders, when, in reality, it hides delivery charges through hidden food markup applied exclusively to delivery orders, and through the assessment of an elusive "service fee" exclusively charged to delivery customers

77.    Defendant intended that Plaintiff and the proposed members of the Class would rely on its misrepresentations, deceptions, acts, concealments and omissions, in an effort to maximize its sales.

78.    Defendant also violated FDUPTA by failing to disclose and actively concealing or otherwise obscuring through material omissions its actual delivery fees from Plaintiff and the proposed members of the Class.  These omissions are material in that a reasonable consumer would have considered information concerning the delivery fees in deciding whether to utilize Defendant's delivery services.

79.    Had Plaintiff and the proposed members of the Class known that Chipotle's actual delivery fees were substantially more than represented, they would not have  made delivery orders with Chipotle.  Instead, Plaintiff and the proposed members of the Class would have made in-store purchases or would not have purchased food from Chipotle at all.

80.    Plaintiff and the proposed members of the Class have been injured by Defendant's violations of FDUPTA.  The injuries to consumers are substantial, are not outweighed by any countervailing benefits to consumers or competition and could not have been reasonably avoided by consumers.

81.    As a direct and proximate result of the foregoing, Plaintiff and the proposed members of the Class have been damaged in an amount to be determined at trial.  In

addition to actual damages, Plaintiff and the Class are entitled to declaratory and injunctive relief as well as reasonable attorney's fees and costs pursuant to FDUPTA.

## SECOND CAUSE OF ACTION
## FRAUD IN THE INDUCEMENT
## (ASSERTED ON BEHALF OF PLAINTIFF AND THE CLASS)

82.   Plaintiff repeats, realleges and incorporates by reference each of the foregoing and succeeding paragraphs of this Complaint as if fully set forth herein.

83.   Defendant made material misrepresentations regarding the true nature of Chipotle's delivery fee, which were false. Specifically, Defendant misrepresented and omitted on its website and mobile app that it provides "free delivery" or "$1 delivery" for food orders, when, in reality, it hides delivery charges through hidden food markup applied exclusively to delivery orders, and through the assessment of an elusive "service fee" exclusively charged to delivery customers.

84.   Defendant made these representations knowing them to be false or otherwise knowing that its omissions were materially misleading or were likely to mislead consumers as to the true cost of the delivery charge.

85.   Defendant made these representations and engaged in these omissions intending that consumers be induced to order low-cost food for delivery through the Chipotle website or app.

86.   Plaintiff and the proposed members of the Class justifiably relied upon these representations or otherwise were unaware of the true state of facts due to omissions when placing food orders for delivery through the Chipotle website or app.

87.     As an actual and proximate result of Defendant's misconduct, Plaintiff and the proposed members of the Class were injured and suffered damages.

88.     Defendant is liable to Plaintiff and the proposed members of the Class for damages in amounts to be proven at trial.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, requests judgment against Defendant granting the following relief:

a.     An order certifying this case as a class action and appointing Plaintiff's counsel to represent the Class and Plaintiff as representative of the Class;

b.     All recoverable compensatory and other damages sustained by Plaintiff and the Class;

c.     Actual and/or statutory damages for injuries suffered by Plaintiff and the Class in the maximum amount permitted by applicable law;

d.     Declaratory and injunctive relief as set forth above;

e.     An Order requiring Defendant to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth herein;

f.     Payment of reasonable attorneys' fees and costs as may be allowable under any applicable statute, contract or rule of law;

g.     An order requiring Defendant to pay both pre-and post-judgment interest on any amounts awarded; and

h.     Such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and the members of the Class demand a trial by jury on all issues so triable.

Dated:  March 18, 2021                Respectfully submitted,

By:   /s/ D. Michael Campbell
D. Michael Campbell (FL Bar No 650188)
**CAMPBELL LAW**
PO Box 24358
Lakeland, FL
Telephone: (863) 227-4315
Fax: (863) 213-4581
Email: dmcampbell@campbelllaw.com

Robert K. Shelquist
Rebecca A. Peterson
Craig S. Davis
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Ste 2200
Minneapolis, MN 55401
Telephone: (612)339-6900
Fax: (612)339-0981
Email: rkshelquist@locklaw.com
rapeterson@locklaw.com
csdavis@locklaw.com

**Attorneys for Plaintiff and the Class**